T.C. Memo. 1996-289


UNITED STATES TAX COURT


HUGH AND LINDA JANOW, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 17775-87.                     Filed June 20, 1996.


<u>Hugh Janow</u>, pro se.

<u>Bernard S. Mark</u>, for petitioner Linda Janow.

<u>Lawrence L. Davidow</u>, for respondent.


MEMORANDUM OPINION

PAJAK, <u>Special Trial Judge</u>:  Respondent determined deficiencies in, additions to tax, and increased interest in petitioners' Federal income taxes as follows:

|  |  | Additions to Tax and Increased Interest | | | | |
|  |  | Sec. | Sec. | Sec. | Sec. | Sec. |
| Year | Deficiency | 6653(a) | 6653(a)(1) | 6653(a)(2) | 6659 | 6621(c) |
| 1978 | $39,133 | $1,956.65 | -- | -- | -- | * |
| 1979 | 34,365 | 1,718.25 | -- | -- | -- | * |
| 1980 | 94,226 | 4,711.30 | -- | -- | -- | * |
| 1981 | 34,181 | -- | $1,709.05 | ** | $1,910.70 | * |

* Amount equal to 120 percent of the interest payable under sec. 6601 with respect to any substantial underpayment attributable to tax-motivated transactions.
** Amount equal to 50 percent of the interest due on $34,181 on the portion of the underpayment attributable to negligence.

This case was submitted fully stipulated as to the Securities Arbitrage Company issue. The stipulated facts are so found. For clarity and convenience, the facts and opinion have been combined.

The Court must decide whether a Closing Agreement executed by the parties entitles petitioners to exclude from income guaranteed payments received by petitioner husband from Securities Arbitrage Company in 1980 and 1981. (An issue with respect to Federal Arbitrage Company, another partnership, remains for resolution before a decision can be entered in this case.)

Petitioners resided in West Nyack, New York, when their petition was filed.

During the years in issue, Hugh Janow (petitioner) was a general partner in a limited partnership, Securities Arbitrage Company (Securities). Securities is one of several partnerships that comprise respondent's Cralin Commodity National Tax

Litigation Project. Petitioner was general counsel of Securities for many years. He is also a practicing member of the Bar of this Court.

For the years in issue, petitioner received Schedules K-1 from Securities reflecting his distributive share of items of partnership income and loss, and cash distributions representing guaranteed payments from Securities. The Schedule K-1 for 1980 shows that petitioner received $39,024 as a guaranteed payment in that year. The Schedule K-1 for 1981 shows that petitioner received $24,220 as a guaranteed payment in that year.

On Schedule E of their 1980 Federal income tax return, petitioners reported, with respect to Securities, a loss in the amount of $97,669, and income in the amount of $39,024, which was the guaranteed payment received by petitioner in that year.

On Schedule E of their 1981 Federal income tax return, petitioners reported, with respect to Securities, income in the amount of $30,048. This income was composed of the $24,220 guaranteed payment and petitioner's distributive share of partnership income.

In the explanation of adjustments attached to the notice of deficiency, respondent used petitioners' partnership income/loss (including guaranteed payments) as reported on their 1980 and 1981 returns to make the adjustments. Respondent did not make any determinations or adjustments with regard to the guaranteed

payments petitioners received from Securities in 1980 and 1981 and reported on their returns for those years.

After reviewing the record, we find that petitioners correctly reported the guaranteed payments on their 1980 and 1981 returns; that respondent made no adjustments with respect to those guaranteed payments; that the petition does not raise any issue as to the guaranteed payments; and that the answer does not raise such an issue.  In short, the guaranteed payments should not be an issue before this Court.  Nevertheless, inasmuch as the parties have addressed the matter otherwise, we shall do likewise.  We shall consider the issue as tried by consent. Rule 41(b)(1).

Respondent initially prepared computations, which included a Statement of Account and Audit Statement (the Computations). Over a period of months, the parties revised their Computations. The Computations did not make any adjustments to the guaranteed payments reported as income by petitioners in 1980 and 1981.

Over a year later, the parties prepared a Stipulation of Settled Issues with regard to the Securities issues (Stipulation).  The Stipulation was filed by this Court and provides, in pertinent part, that:

> 1.   Attached hereto as Exhibit A is a copy of fully executed Forms 906, Closing Agreement on Final Determination Covering Specific Matters relating to the petitioners' interest and agreed treatment of items of income, gain, loss or deduction arising as a result of their direct or indirect investments in Securities Arbitrage Co.  Exhibit A resolves the tax aspects of

the petitioners' interest in Securities Arbitrage Co. for all years.

2.    Adjustments to the petitioners' income tax liabilities for the taxable years involved herein which relate, directly or indirectly, to Securities Arbitrage Co. will be determined by the terms of the agreement in Exhibit A.  Such adjustments will be incorporated in a final decision to be entered by this Court for Docket No. 17775-87.

In the Form 906, Closing Agreement On Final Determination Covering Specific Matters (the Closing Agreement), attached to the Stipulation, the parties agreed to the following pertinent matters:

WHEREAS, an issue exists between the parties as to whether taxpayers are entitled to deduct losses as a result of their Securities Arbitrage Co. investment,

WHEREAS, an issue exists between the parties as to whether taxpayers realized income or gains as a result of their investment,

WHEREAS, the parties wish to determine with finality the treatment for Federal income tax purposes of any losses incurred and the amount, if any, of income and gains realized by taxpayers as a result of their investment in Securities Arbitrage Co. partnership.

NOW IT IS HEREBY DETERMINED AND AGREED, for Federal income tax purposes that:

1.    Taxpayers are not entitled to deductions, losses or credits nor are they required to report income or gains as a result of their investment in Securities Arbitrage Co. partnership except as provided herein.

*    *    *    *    *    *    *

3.    As a result of the investment in Securities Arbitrage Co. partnership, taxpayers are entitled to deductions or losses as follows:

*    *    *    *    *    *    *

c. 1980 $ <u>18,898.00</u>     ($12,598,856 x 15% x taxpayers
                                interest in Securities Arbitrage
                                Co. partnership as an ordinary
                                deduction);

d. 1980 $ <u>80,906.00</u> (180% of actual cash
                            investment in Securities
                            Arbitrage Co. partnership as
                            an ordinary deduction.)

        *    *    *    *    *    *    *

6.   During * * * 1980 * * * taxpayers realized and are required to report income as follows, as a result of the Securities Arbitrage Co. partnership investment:

        *    *    *    *    *    *    *

b. 1980 $ <u>38,305.00</u> ([$20,060,852 x 15% +
                            $821,457] x taxpayers'
                            interest in Securities
                            Arbitrage Co. partnership as
                            short-term gain);

        *    *    *    *    *    *    *

7.   Any money or other property received by the taxpayers, directly or indirectly, as a result of the investment in Securities Arbitrage Co. partnership shall constitute ordinary income in the year received.

8.   The taxpayers have executed concurrently with this agreement an agreement as an investor in the Securities Arbitrage Co. partnership pursuant to I.R.C. Section 6224(c) agreeing that Securities Arbitrage Co. partnership had no gains, losses, deductions or credits for the taxable year 1981 through 1985, inclusive.

After the Stipulation was filed, respondent mailed to petitioners a proposed Decision and overpayment Stipulation, together with the revised Computations.  Respondent, by letter, twice asked petitioners to execute and return the proposed

Decision and overpayment Stipulation. Petitioners did not sign the proposed Decision and overpayment Stipulation.

Nearly 2 years after the Computations had last been revised by the parties, petitioner advised respondent by letter that he believed the proposed Decision document and related Computations did not accurately reflect the terms of the Closing Agreement and consequently were unacceptable. In essence, petitioner claimed for the first time that the Closing Agreement did not mandate inclusion of the guaranteed payments petitioners actually received in 1980 and 1981.

Section 7121(a) authorizes the Commissioner to enter into an agreement in writing with any person relating to such person's liability in respect of any internal revenue tax for any taxable period. A closing agreement is binding on the parties as to the matters agreed upon, and the agreement may not be annulled, modified, set aside, or disregarded in any suit, action, or proceeding, except upon a showing of fraud, malfeasance, or misrepresentation of a material fact. Sec. 7121(b).

Neither respondent nor petitioners ask us to set aside the Closing Agreement. Both assert that the Closing Agreement is unambiguous. They disagree, however, with respect to the proper interpretation of the agreement.

Ordinary principles of contract law govern the interpretation of closing agreements. Rink v. Commissioner, 100 T.C. 319, 325 (1993), affd. 47 F.3d 168 (6th Cir. 1995). Contract law principles generally direct that we look within the

"four corners" of the agreement, unless it is ambiguous as to essential terms.  Rink v. Commissioner, supra.

We agree with the parties that the Securities Closing Agreement is unambiguous.  Paragraph 7 states that "Any money or other property received by the taxpayers, directly or indirectly, as a result of the investment in Securities * * * shall constitute ordinary income in the year received."

Despite this clear statement, petitioners argue that:

> Respondent may not require Petitioners to include cash distributions as income in years covered by paragraphs 3, 6 and 8 as a consequence of paragraph 7 of the Agreement.  Respondent's counsel correctly classified paragraph 7 as a 'catch-all provision' in his opening statement of October 25.  As such, it must be regarded as a general provision which cannot be properly read to override the specific mandates of paragraphs 3, 6 and 8.  William Higgins & Sons, Inc. v. New York, 20 NY.2d 425, 428 (1967); See Also John Hancock Mutual Life Ins., 717 F.2d at 669-70 n.8.

We reject petitioners' argument.  There is no dispute with respect to the proposition that when two contract provisions are in apparent conflict, the specific provision overrides the more general provision.  As stated by the Court of Appeals for the Second Circuit (the circuit to which an appeal of this case would lie) in John Hancock Mut. Life v. Carolina Power & Light, 717 F.2d 664, 669 n.8 (2d Cir. 1983):

> New York law recognizes that definitive, particularized contract language takes precedence over expressions of intent that are general, summary, or preliminary.  As one New York Court has explained, "Thus, where the parties have particularized the terms of a contract an apparently inconsistent general statement to a different effect must yield."
> [Citations omitted.]

In the Securities Closing Agreement, paragraph 7 is not in conflict with paragraphs 3, 6, or 8, nor is it "general, summary, or preliminary" language. Paragraph 3 refers to petitioners' distributive share of Securities' partnership ordinary deductions and short-term losses for 1979 and 1980. Paragraph 6 covers petitioners' distributive share of Securities' partnership income to be reported as short-term or long-term capital gain for 1979, 1980 and 1985. Paragraph 8 deals with the gains, losses, deductions, and credits of Securities as a partnership for the years 1981 through 1985. Paragraph 7 specifically deals with any "money or other property" petitioners received, directly or indirectly, as a result of their investment in Securities, and states that such money or other property "shall constitute ordinary income in the year received." Rather than conflicting with the other paragraphs, we find this paragraph supplements those paragraphs and covers the guaranteed payments in issue.

Moreover, the definition of a "guaranteed payment" to a partner supports this interpretation of the Closing Agreement. A guaranteed payment is a payment made by a partnership to a partner for services or for the use of capital and are considered as made to one who is not a partner, to the extent such payments are determined without regard to the income of the partnership. Sec. 707(c); sec. 1.707-1(c), Income Tax Regs. For the purposes of sections 61(a) and 162(a), guaranteed payments are not considered part of a partner's distributive share of partnership

income. Pursuant to section 707, a partner shall include in his taxable year guaranteed payments which are made to him in a partnership taxable year ending with or within that taxable year. Sec. 1.706-1, Income Tax Regs.

An examination of paragraphs 3, 6, and 8 reveals that the items in those paragraphs are calculated based on, or are a reference to, Securities' partnership income and deductions for the stated years. Thus, these paragraphs do not specifically cover the guaranteed payments petitioners received in 1980 and 1981 (except to the extent deduction of the guaranteed payment resulted in a larger loss or a reduction in income for the partnership in 1980 and 1981, respectively).

In conclusion, we find that no ambiguity exists in the Securities Closing Agreement. The language of the agreement is clear, and paragraph 7 requires petitioners to include the guaranteed payments as ordinary income in the years received. Consequently, we shall not look past the "four corners" of the document to interpret paragraph 7 in the manner that petitioners urge.

To the extent we have not addressed petitioners' other arguments, the Court finds them to be without merit.

To reflect the foregoing,

An appropriate order

will be issued.